Argued and submitted July 13, affirmed December 27, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# SHANE McLEOD WOOD,
*Appellant.*

0312-56943; A126244

149 P3d 1265

Richard E. Oberdorfer argued the cause for appellant. With him on the brief was Oberdorfer Law Firm LLC.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

LANDAU, P. J.

---

* Schuman, J., *vice* Ceniceros, S. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for one count of misdemeanor driving under the influence of intoxicants. ORS 813.010(1). His sole contention on appeal is that the trial court erred in denying his motion to suppress. We affirm.

The relevant facts are uncontested. Shortly before midnight, Fairview Reserve Police Officer Edwards observed defendant drive into a parking lot and stop. Edwards knew the parking lot to be a high-crime area. He turned his own vehicle around and drove into the parking lot, pulling up beside defendant's car. Edwards walked to defendant's side of the car and heard loud music coming from inside. In spite of the loud music, however, defendant appeared to be unconscious. Edwards tapped on the window of the driver side door, but defendant did not respond. Edwards tapped on the window a second time. This time, defendant awoke, leaned his head towards the officer, looked at him "in a gaze," but then lay back and closed his eyes. Edwards tapped on the window a third time. Defendant again looked back at the officer briefly and then appeared to pass out of consciousness.

At that point, Edwards opened defendant's car door. He did so because "there was really no sort of response of [defendant] acknowledging me, so I did open the car door at that time for community safety." According to Edwards, he wanted to "[m]ake sure that [defendant] was conscious, he didn't have any medical problems, make sure he wasn't going to die."

When Edwards opened the door, he smelled a strong odor of alcohol. When defendant awoke and got out of the car, Edwards observed that defendant had bloodshot eyes and droopy eyelids and that defendant swayed and staggered. Defendant explained to Edwards that he had consumed "about five beers." He consented to take field sobriety tests, all of which he failed. Edwards arrested defendant and drove him to the police station, where defendant consented to a breath test; the breath sample registered a .13 percent blood alcohol content.

Defendant moved to suppress all of the evidence that Edwards obtained after he opened the car door. He argued that the opening of the car door amounted to an unwarranted search and that, as a result, any evidence that the officer may have observed or obtained after that point was tainted. The state argued that the officer's action in opening the car door was justified under the community caretaking statute, ORS 133.033, which authorizes a police officer to render aid to injured or ill persons and that the officer's subsequent observations were made from a lawful vantage point. The trial court agreed, explaining that Edwards

"thought he had somebody that was ill. When you look at the statute, ORS 133.033, 'to render aid to injured or ill persons' is something an officer can do if they have objective, subjective beliefs that are reasonable. And they—in this case, he did.

"Can he open the door? I think he can take reasonable steps. I think he can take the—can open that door and to, you know, assist him. Otherwise, what good is community caretaking? They won't give any assistance. Just identify the need and walk away? That doesn't make any sense."

On appeal, defendant assigns error to the denial of his motion, arguing that the fact that ORS 133.033 may have authorized the officer's action is not dispositive. According to defendant, the statute is circumscribed by Article I, section 9, of the Oregon Constitution, which he contends requires that the evidence that the officer obtained after opening the car door remain inadmissible because there was no "true emergency" sufficient to justify a warrantless search of his car. In defendant's view, the fact that the officer had a good faith belief that such an emergency existed is not enough; there must, he argues, be a showing that an individual was actually in urgent need of medical attention. The state argues that the officer's objectively reasonable belief that defendant was in need of immediate assistance was sufficient to justify opening the car door. We agree with the state.

ORS 133.033 provides, in part:

"(1)   Except as otherwise prohibited by law, any peace officer of this state * * * is authorized to perform community caretaking functions.

"(2) As used in this section, 'community caretaking functions' means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public. 'Community caretaking function' includes, but is not limited to:

"(a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons."

In *State v. Christenson*, 181 Or App 345, 349, 45 P3d 511 (2002), we explained that "although the statute does not require an actual emergency, the need [to enter or remain on the premises of another] must be based on an officer's objectively reasonable perceptions."

■ In this case, it is undisputed that Edwards subjectively believed that defendant was in need of immediate aid or assistance. The only question is whether that subjective belief was objectively reasonable. Whether an officer's perceptions of an emergency are objectively reasonable is a question of law and will depend on the facts of each case. *Id.* at 350.

In cases involving the analogous constitutional "emergency aid" exception to the constitutional warrant requirement, we have stated that an officer's perceptions of an emergency are objectively reasonable if the record reflects, among other things, "objective indicia of a particular individual being in distress" suggesting that "immediate action was required to protect life." *State v. Burdick*, 209 Or App 575, 581, 149 P3d 190 (2006) (reviewing cases). For example, in *State v. Martin*, 124 Or App 459, 464, 863 P2d 1276 (1993), we concluded that an officer reasonably believed that he confronted a true emergency when he found the defendant slumped over the steering wheel in a car in a parking lot with the engine running. *See also State v. Rhodes*, 315 Or 191, 843 P2d 927 (1992) (police officer found the defendant slumped over in a parked car with engine running).

This case is not materially different. Edwards observed that defendant was unconscious in the front seat of the car despite the fact that loud music was playing inside. The officer attempted to awaken defendant three times without success. Each time, defendant could only briefly raise his head, look at Edwards "in a gaze," and then pass out. Under the circumstances, Edwards reasonably believed that defendant was incapacitated and in need of medical assistance. The fact that, as matters turned out, there was no true medical emergency is not determinative. *Christenson*, 181 Or App at 349, 352.

We conclude that the trial court did not err in denying defendant's motion to suppress.

Affirmed.